IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN HOCHROTH,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>ALLY BANK, a Utah for profit corporation; CENLAR FSB, a federally charted bank; DOES 1–10,<br><br>　　　　　　Defendants. | CIVIL NO. 18-00319-JAO-KJM<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY THE COMPLAINT** |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY THE COMPLAINT**

**INTRODUCTION**

This case concerns the administration of Plaintiff John Hochroth's home loan and mortgage by Defendants Ally Bank and Cenlar FSB ("Cenlar"). Plaintiff asserts causes of action under the Fair Debt Collection Practices Act ("FDCPA") and state common law, seeking damages for Defendants' alleged mishandling of Plaintiff's default. Defendants move to dismiss the Complaint primarily under the *Rooker-Feldman* doctrine and on preclusion grounds, based on a prior foreclosure judgment in state court. Defendants ask the Court, in the alternative, to stay the federal claims pending resolution of Plaintiff's appeal of the state foreclosure

judgment. For the reasons discussed below, the Court DENIES Defendants' motion.

## BACKGROUND

Plaintiff owns a house in Kaneohe, Hawaiʻi, with a home loan and mortgage from Ally Bank. Doc. No. 1 at 3. Cenlar is the authorized servicer of the mortgage and loan. *Id.* at 4. Plaintiff became delinquent on his mortgage payments and Ally Bank filed to foreclose on the mortgage in state court in February 2016. Doc. No. 8-2 at 1; Doc. No. 8-3 at 5. The state court granted a decree of foreclosure (the "Foreclosure Decree") and entered judgment on October 16, 2017. Doc. No. 8-3 at 8, 12. Plaintiff's appeal of the Foreclosure Decree is currently pending. Doc. No. 11 at 18; Doc. No. 11-6.

In the course of the foreclosure proceeding, Plaintiff attempted to ascertain from Ally Bank the amount he would need to pay to reinstate his loan. Doc. No. 1 at 5–6. Ally Bank responded that Plaintiff's right to reinstatement had passed. *Id.* at 6; Doc. No. 8-6 at 55. However, despite Ally Bank's representations that Plaintiff's right to reinstatement had expired, Cenlar continued to offer Plaintiff the opportunity to reinstate his mortgage loan. Doc. No. 1 at 6–7. In December of 2017, after the foreclosure decree had already issued, Cenlar sent Plaintiff a statement that he owed $111,179.75 on his loan, and that this was "the amount [due] to reinstate" the loan. Doc. No. 8-6 at 48.

On February 9, 2018, Ally Bank filed a motion for attorneys' fees and costs for the legal work performed on the Foreclosure Decree (the "Attorneys' Fees Motion"). Doc. No. 11-7. Plaintiff opposed the Attorneys' Fees Motion, primarily arguing that the requested attorneys' fees were excessive and improperly billed. Doc. No. 8-6. Plaintiff also contended that because Ally Bank had refused to inform him of his reinstatement amounts, Ally Bank should not be awarded attorneys' fees for time spent litigating the foreclosure case after that refusal. *Id.*

While the Attorneys' Fees Motion was pending, Cenlar and Plaintiff reached an agreement on reinstatement. Doc. No. 1 at 7. On February 26, 2018, Cenlar sent an acknowledgment letter to Plaintiff, stating that his reinstatement payment was received, and that "any foreclosure action will be closed." Doc. No. 1 at 7; Doc. No. 11 at 8. The reinstatement agreement required Plaintiff to pay certain costs and attorneys' fees related to the foreclosure action. Doc. No. 1 at 7. Plaintiff's subsequent loan statements from Cenlar increased to reflect his agreement to pay these attorneys' fees and costs. *Id.*

The state court granted Ally Bank's Attorneys' Fees Motion on May 4, 2018 (the "Attorneys' Fees Order"). Doc. No. 8-7. The Attorneys' Fees Order did not address Plaintiff's argument that attorneys' fees accumulated after Ally Bank refused to provide Plaintiff the reinstatement amount should not be awarded. *Id.* After the issuance of the Attorneys' Fees Order, Plaintiff sent a letter to the state

3

court informing the court that Plaintiff had fully reinstated his loan and arguing that it was improper for Ally Bank to continue to seek foreclosure or attorneys' fees. Doc. No. 8-9. The state court held a hearing to address Plaintiff's letter, during which Plaintiff's counsel stated that if Ally Bank did not agree to set aside the Attorneys' Fees Order, Plaintiff would file a motion to set it aside based on the reinstatement agreement with Cenlar. Doc. No. 8-10 at 11:7–13. The court did not enter any rulings during the hearing, and instead scheduled another status conference to give the parties time to discuss the issues with their clients and with each other. *Id.* The record does not reflect any further information about the status conference. Thereafter, Plaintiff filed a motion to set aside and vacate the Foreclosure Decree and Attorneys' Fees Order, but Plaintiff voluntarily withdrew that motion before the state court addressed it. *See* Doc. No. 8 at 16.

On August 16, 2018, Plaintiff filed the present Complaint, asserting causes of action under the FDCPA and state common law against Defendants. The FDCPA claims relate to Defendants' communications with Plaintiff regarding his debt: Count 1 alleges calls before 8:00 a.m. and after 9:00 p.m.; Count 2 alleges calls made directly to Plaintiff even though Cenlar was aware Plaintiff had counsel; Count 3 alleges communications with Plaintiff after he requested they stop; Count 4 alleges harassing communications; Count 5 alleges communications with intent to annoy or harass; Count 6 alleges calls without identifying the caller;

4

Count 7 alleges false and deceptive communications regarding loan reinstatement; Count 8 alleges threats of imminent eviction; Count 9 alleges a failure to advise Plaintiff that the communications were from debt collectors; Count 10 alleges that Cenlar Bank communicated in a way that gave the false appearance of legal process; and Count 11 alleges various violations related to door tags left on Plaintiff's door. Doc. No. 1 at 9–22. Counts 12 through 14, the state law claims, seek damages for Ally Bank's and Cenlar's contradictory statements and actions regarding Plaintiff's ability to reinstate his loan. Doc. No. 1 at 23–27. Specifically, Count 12 asserts a breach of contract claim; Count 13 asserts a promissory estoppel claim; and Count 14 asserts a Hawaiʻi statutory violation of unfair and deceptive practices for the alleged contradictory positions of Cenlar and Ally Bank. *Id.*

Defendants' motion to dismiss asserts several grounds for dismissal and abstention. Defendants move for dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), pursuant to the *Rooker-Feldman* doctrine, and under FRCP 12(b)(6) on claim preclusion grounds. *See* Doc. No. 8 at 19 n.15, 26 n.16. Defendants also seek a stay of the federal claims pursuant to the *Younger* abstention doctrine and the Court's inherent authority to issue a stay. Doc. No. 8 at 2.

## STANDARD OF REVIEW

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, the court accepts the facts alleged in the complaint as true." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000). Although affirmative defenses generally do not suffice for a motion to dismiss, preclusion may be the basis for dismissal under FRCP 12(b)(6) where there are no disputed issues of fact. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

The *Rooker-Feldman* doctrine addresses jurisdiction and is thus analyzed under the FRCP 12(b)(1) standard. *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Because federal courts have limited subject-matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Dismissal is warranted when the plaintiff fails to meet its burden. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

The Court may rely on evidence submitted outside of the complaint to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## ANALYSIS

### A. The *Rooker-Feldman* Doctrine Does Not Bar Plaintiff's Complaint.

The *Rooker-Feldman* doctrine precludes suits in federal court that constitute de facto appeals of state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005); *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). The doctrine does not bar parallel litigation of the same issues in federal and state courts. *Exxon Mobil*, 544 U.S. at 292 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Nor does it divest a court's jurisdiction when the preclusive effect of a prior state court judgment may bar the claim. *Noel*, 341 F.3d at 1164–65 (9th Cir. 2003).

In *Rooker v. Fidelity Trust Co.*, after the plaintiffs failed to succeed in state court, they brought suit in federal court arguing that the state court ruling was unconstitutional. 263 U.S. 413, 414–415 (1923). And in *D.C. Court of Appeals v. Feldman*, two bar applicants filed suit in district court alleging that the state court had wrongfully denied them a waiver of bar application requirements. 460 U.S. 462, 465–473 (1983). In both cases, the Supreme Court held that the district court did not have subject-matter jurisdiction over claims seeking to overturn or undo

7

state judicial determinations, because appellate jurisdiction over state actions is left exclusively to the Supreme Court. *See Rooker*, 263 U.S. at 415–416; *Feldman*, 460 U.S. at 482; *see also Exxon Mobil*, 544 U.S. at 284–86. In *Exxon Mobil*, the Supreme Court held that the doctrine remains "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." 544 U.S. at 284.

In *Feldman*, the Supreme Court also held that the allegations that were "inextricably intertwined" with the state court's judgment were precluded from district court review. *Feldman*, 460 U.S. at 486–87. The Ninth Circuit has stated that "[t]he 'inextricably intertwined' language from *Feldman* is not a test to determine whether a claim is a de facto appeal but is rather a second and distinct step in the *Rooker-Feldman* analysis. Should the action *not* contain a forbidden de facto appeal, the *Rooker-Feldman* inquiry ends." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (citations omitted). In *Noel*, the Ninth Circuit explained that the "inextricably intertwined" test is most likely to apply when "the state court both promulgates and applies the rule at issue—that is, to the category of cases [like *Feldman*] in which the local court has acted in both legislative and a judicial capacity—and in which the loser in state court later challenges in federal court both the rule and its application." 341 F.3d at 1158.

A suit is a de facto appeal when it is a direct challenge to a state court's factual or legal conclusion. *Bell*, 709 F.3d at 897. In *Bell*, the plaintiffs sought a federal court order expunging prior criminal convictions and damages from a state court conviction because the defendant police officers had allegedly acted unconstitutionally in enforcing an ordinance against them. 709 F.3d at 893–94. The Ninth Circuit reversed the district court's order granting dismissal under *Rooker-Feldman* because the complaint sought damages and relief based on the defendants' conduct rather than alleging a legal or factual mistake in the state judgment. *Id.* at 897. The Ninth Circuit explained, "even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff *also* alleges a legal error by the state court." *Id.* Indeed, "[w]ithout a direct challenge to a state court's factual or legal conclusion, [the] suit is not a forbidden de facto appeal." *Id.* at 897.

Importantly, *Rooker-Feldman* does not divest a court of subject matter jurisdiction merely because an identical claim is pending in state court, or because a state court judgment has already addressed the identical issue. *See Noel*, 341 F.3d at 1159–61. Thus, the *Rooker-Feldman* doctrine simply asks:

> "[I]s the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) (quoted with approval by *Noel*, 341 F.3d at 1164).

Here, Plaintiff's claims fall into two categories: the FDCPA claims asserting damages for the manner in which Defendants communicated with Plaintiff regarding his loan, and state law claims asserting damages arising from Ally Bank's alleged refusal to honor the reinstatement agreement. Defendants argue that the state law claims are de facto appeals, and that the FDCPA claims are inextricably intertwined. Because the Court concludes that the state law claims are not de facto appeals, the FDCPA claims cannot be barred as inextricably intertwined. Thus, *Rooker-Feldman* does not preclude any of Plaintiff's claims.

**1. *Rooker-Feldman* does not bar Plaintiff's state law claims.**

Plaintiff asserts three state law causes of action relating to Ally Bank's alleged refusal to acknowledge Plaintiff's loan reinstatement agreement with Cenlar. *See* Doc. No. 1 at 23–27. The *Rooker-Feldman* doctrine does not bar the state law claims because they do not allege error in, or harm caused by, the state court judgments; rather, the state law claims assert harms caused by the conduct of Defendants. They are not de facto appeals. Specifically, the state law claims allege that Ally Bank's attempts to enforce the Foreclosure Decree and Attorneys' Fees Order and otherwise collect attorneys' fees after Cenlar entered into a reinstatement agreement with Plaintiff. *See* Doc. No. 1 at ¶¶ 131–157. In other

words, Plaintiff does not contend that the Attorneys' Fees Order was wrongly decided. Rather, he seeks damages and relief for behavior stemming from an alleged breach of contract and unfair practices.

Defendants raise several arguments why the state law claims should be dismissed under *Rooker-Feldman*, but each is misplaced. First, Defendants urge dismissal because "the facts and arguments raised in the state law claims were already made and rejected in the Foreclosure Action." Doc. No. 8 at 19. However, this is simply not the case. Defendants point to Plaintiff's counterclaims in the foreclosure action, but Plaintiff's counterclaims were not the same as the claims here. The counterclaims merely alleged that Ally Bank was not the real party in interest. *See* Doc. No. 8-2 at 5–8.

Defendants also contend that Plaintiff made the same arguments in the Attorneys' Fees Motion and in his motion to set aside the Foreclosure Decree as are raised in the Complaint. *See* Doc. No. 8 at 13–16. However, none of the state court orders addressed the claims alleged in this Complaint. In the Attorneys' Fees Motion, Plaintiff argued that Ally Bank should not be entitled to attorneys' fees after the date that Plaintiff requested the reinstatement amount from Ally Bank, contending that Ally Bank should have stopped litigating the foreclosure at that time, rather than "block reinstatement." *See* Doc. No. 8-6 at 15–16, 23. But this is not the same allegation made in the Complaint, and the state court never addressed

11

it.  *See* Doc. No. 8-7; Doc. No. 8-10 at 9:1–15.  Similarly, the state court did not rule on Plaintiff's motion to set aside, Doc. No. 8-11, because Plaintiff voluntarily withdrew the motion before it was decided.  *See* Doc. No. 8 at 16.  Finally, the state court did not substantively respond to Plaintiff's letter to the state court asserting that Ally Bank refused to honor the reinstatement agreement.  *See* Doc. No. 8-10.  Thus, Defendants' argument that the state law claims "were already made and rejected in the Foreclosure Action," Doc. No. 8 at 19, is unsupported.

More fundamentally, however, even if the state court had addressed the identical claims, the *Rooker-Feldman* doctrine would not bar these claims because the claims seek damages for Defendants' conduct; they do not "seek[] to set aside a state judgment." *GASH Assocs.*, 995 F.2d at 728.  If the state court did indeed rule on the same claims as Defendants argue, preclusion may be available to dispose of them.  *See Exxon Mobil*, 544 U.S. at 283 (*Rooker-Feldman* does not supersede the ordinary application of preclusion law).

Defendants also argue that the state law claims are de facto appeals because the Complaint references harm caused by Ally Bank's enforcement of the Attorneys' Fees Order.  Doc. No. 8 at 13.  The Complaint, however, does not allege that the Attorneys' Fees Order was wrongly decided or caused Plaintiff's harm.  Rather, the state law claims focus on Defendants' wrongful conduct in allegedly (1) refusing to honor the reinstatement agreement and not dismissing the

12

foreclosure action; and (2) charging Plaintiff for attorneys' fees to reinstate the loan, while simultaneously enforcing the Attorneys' Fees Order that awarded the same attorneys' fees. Doc. No. 1 at 24–25. Thus, the Complaint asserts claims against Defendants' conduct, and does not seek to overturn the state court judgment nor allege error in that judgment. Indeed, to determine whether Plaintiff is entitled to damages for his breach of contract, promissory estoppel, and unfair and deceptive practices claims, the Court need not analyze the state court judgments.

Thus, *Rooker-Feldman* is inapplicable even if the relief sought would effectively vacate the state court judgment, as defendants argue. *See Bell*, 709 F.3d at 897; *Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004) (holding *Rooker-Feldman* inapplicable "even though [Plaintiff's] complaint seeks relief from the injunction entered by the state court"); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (holding *Rooker-Feldman* inapplicable even though plaintiff sought to set aside state court judgment as relief for defendant's fraud). Defendants cite to *Mains v. Citibank, N.A.*, 852 F.3d 669 (7th Cir. 2017), for the proposition that *Rooker-Feldman* bars suit when the only relief available would "(effectively) vacate" the state court judgment. Doc. No. 8 at 23. The Court is not persuaded. The court in *Mains* addressed claims that asserted "error" in a state court foreclosure case because "fraud tainted the state court's judgment." *Id.*

Here, there is no such alleged error. Indeed, the claims raised here allege behavior that occurred after the state law judgments were entered. Just as in *Bell*, the Complaint seeks damages and relief from Defendants' conduct; it does not "challenge" the "state court's factual or legal conclusion." 709 F.3d at 897.

### 2. *Rooker-Feldman* does not bar Plaintiff's FDCPA claims.

Defendants contend that *Rooker-Feldman* bars the FDCPA claims because they are "inextricably intertwined" with the state law claims. Defendants conceded at the hearing, however, that the question of whether claims are inextricably intertwined does not arise unless the Court concludes that the Complaint, at least in part, amounts to a de facto appeal. As stated above, the state law claims are not de facto appeals and Defendants do not contend that the FDCPA claims are themselves de facto appeals. Therefore, the FDCPA claims cannot be barred under *Rooker-Feldman*. *See Noel*, 341 F.3d at 1158.

### B. Plaintiff's State Law Claims Are Not Barred by Claim Preclusion.

Defendants' motion also seeks dismissal of Plaintiff's state law claims on preclusion grounds. Doc. No. 8 at 26–29. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given" in the courts of that state. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 (1982). Thus, Hawaiʻi preclusion law applies. *See Albano v. Norwest Fin. Haw., Inc.*, 244 F.3d 1061,

1063 (9th Cir. 2001). The Hawaiʻi Supreme Court has outlined the requirements for claim preclusion:

> [T]he party asserting claim preclusion has the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim presented in the action in question is identical to the one decided in the original suit, or to a claim or defense that might have been properly litigated in the first action but was not litigated or decided.

*E. Sav. Bank, FSB v. Esteban*, 129 Haw. 154, 160 (2013). Thus, claim preclusion cannot be based on a prior judgment that is not "final."

Claim preclusion cannot apply at this time, because the state court has not issued a final judgment. *See E. Sav. Bank*, 129 Haw. at 160 (2013). A "final judgment" for claim preclusion purposes is a judgment that can no longer be appealed—either because the time to appeal has expired or because the appeal has concluded. *See E. Sav. Bank*, 129 Haw. at 160 (final judgment occurred "when the time to appeal the Foreclosure Judgment expired"); *Kauhane v. Acutron Co.*, 71 Haw. 458, 464 (1990) (final judgment occurred when plaintiff "withdrew his appeal and thereby foreclosed [appellate] review"); *Littleton v. State*, 6 Haw. App. 70, 75 (1985) ("[W]here an appeal has been taken, a judgment of the trial court is not final, at least for purposes of res judicata.").

The Court therefore declines to address the remaining requirements of claim preclusion until the appeal is concluded and the state court judgment becomes

15

final.  Thus, the Court DENIES Defendants' motion to dismiss the state law claims under Hawaiʻi preclusion law.

**C.     The *Younger* Abstention Doctrine Is Inapplicable.**

Defendants further argue that the Court should abstain from hearing the Complaint under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), and stay the Complaint until the state court appeal has concluded.  Doc. No. 8 at 21–23.  In civil cases in the Ninth Circuit, *Younger* abstention is required where a state court proceeding (1) is ongoing; (2) is a quasi-criminal enforcement action or involves a state's interest in enforcing the orders and judgments of its courts; (3) implicates important state interests; (4) provides an adequate opportunity to raise the federal questions; and (5) would be enjoined by the federal court action or would have the practical effect of doing so.  *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018).  Defendants' recitation of the *Younger* abstention doctrine, however, does not mention the second or fifth requirements.  *See* Doc. No. 8 at 22.

The Court concludes that the fifth requirement—whether the federal action would enjoin or have the practical effect of enjoining the state court proceeding—is dispositive here.  Because the Court finds that the federal action would not have

the practical effect of enjoining the state proceeding, and declines to abstain under *Younger* on that basis, the Court need not address the other *Younger* requirements.[1]

Federal actions have the "practical effect" of enjoining a state proceeding generally when the complaint seeks injunctive or declaratory relief that would effectively stop the state court proceeding. *See, e.g.*, *San Jose Silicon Valley Chamber of Commerce Political Action Comm.*, 546 F.3d at 1095–96 (finding *Younger* applicable where relief sought in federal court was a permanent injunction precluding defendants from enforcing a statute that was the subject of an ongoing state-initiated proceeding); *Morning Hill Foods, LLC v. Hoshijo*, 259 F. Supp. 3d 1113, 1124 (D. Haw. 2017) (finding *Younger* applicable where complaint sought declaratory relief and injunction to prevent state from pursuing administrative action against plaintiff); *Burlington Ins. Co. v. Panacorp, Inc.*, 758 F. Supp. 2d 1121, 1136 (D. Haw. 2010) (declaratory relief action would have practical effect of enjoining state court proceeding because declaratory relief was sought on identical claims as ongoing state court proceeding). Claims for monetary damages generally do not have the practical effect of enjoining a state court proceeding, except where

---

[1] The Court also doubts that the state court foreclosure proceedings implicate the types of important state interests to which *Younger* applies. *See Logan v. U.S. Bank Nat. Ass'n*, 722 F.3d 1163, 1169 (9th Cir. 2013) (holding that eviction proceeding did not implicate important state interests under *Younger* and suggesting that state interests in property law are generally not sufficient for *Younger* abstention "where the dispute is purely private").

the allegations in the federal complaint "go to the heart" of the issues in the state court proceeding, such that a decision on the merits would have the same practical effect as an injunction. *See Gilbertson v. Albright*, 381 F.3d 965, 982 (9th Cir. 2004).

Here, the Complaint does not seek to enjoin or effectively enjoin the state court proceedings. Each cause of action seeks only monetary damages. *See* Doc. No. 1. Although the prayer for relief also includes a request for "such other and further relief, including specific performance or injunctive relief, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable," the Court does not construe this broad request as seeking to enjoin the state court proceeding. While there is some overlap between Plaintiff's claims and the ongoing state court proceedings, "the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction." *AmerisourceBergen*, 495 F.3d at 1151 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 816 (1976)).

Furthermore, the monetary relief requested will not have the practical effect of enjoining the state court proceeding because the monetary relief is for conduct that was not at issue in the underlying state court proceedings. There is no basis to hold that an award of damages for breaching the reinstatement agreement would effectively enjoin the state court judgment, which merely adjudged Defendants

18

entitled to foreclosure and ordered accompanying attorneys' fees without addressing the reinstatement agreement. Because the Complaint does not seek relief that would enjoin or effectively enjoin the state court proceedings, the Court finds *Younger* abstention inapplicable.

**D.     The Court Declines to Stay the Complaint.**

In the alternative, Defendants seek a stay of the Complaint under the Court's inherent powers. Doc. No. 8 at 31. Defendants argue that in the interests of comity and judicial economy, the Court should stay the action until resolution of the state court appeal. *Id.* It is true that courts generally have the power to stay proceedings until another case is resolved, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (9th Cir. 1936), but courts generally employ this power only where there are substantial benefits of efficiency or fairness to be gained. *See generally Colo. River*, 424 U.S. at 813. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.*

The Court is unpersuaded by Defendants' arguments that the circumstances here warrant such an exception. The claims asserted are not the same as those on appeal in the state court proceeding. Although none of the parties have submitted the appellate briefing to the Court, which would more readily identify the issues on

appeal, it appears that the state court proceeding below addressed (1) whether Plaintiff defaulted on his home loan; (2) whether Ally Bank had a right to foreclose on the mortgage; (3) whether Ally Bank had a right under the loan to collect its attorneys' fees in litigating the foreclosure; and (4) whether the attorneys' fees submitted were reasonable and properly billed. *See* Doc. No. 8-3; Doc No. 8-7. The FDCPA claims concern only damages caused by Defendants' manner of communication and the state law claims concern Defendants' conduct after the foreclosure decree was entered. These claims were not at issue in the state court proceedings. There is thus no basis to conclude that the appeal of the state court proceedings will have any bearing on this litigation. As such, the Court declines to stay the Complaint.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss or in the alternative to stay the Complaint is DENIED.

DATED: Honolulu, Hawai‘i, March 27, 2019.



Jill A. Otake
United States District Judge

Civil No. 18-00319-JAO-KJM, *Hochroth v. Ally Bank*, ORDER DENYING DEFENDANTS' MOTION TO DISMISS

20