IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN HOCHROTH, | CIVIL NO. CV 18-00319 JAO/KJM |
| Plaintiff | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | |
| ALLY BANK, a Utah for profit corporation; CENLAR FSB, a federally charted bank, DOES 1-10, | |
| Defendants. | |

# TABLE OF CONTENTS

.......................................................................................................... PAGE

Table of Contents ...........................................................................................i

Table of Authorities .................................................................................... iii

I.      INTRODUCTION .............................................................................1

II.     INDISPUTABLE MATERIAL FACTS .......................................3

      A.     Relevant Procedure In Foreclosure Action Leading To Settlement Negotiations Between Counsel ...........................................3

      B.     Plaintiff Calls Cenlar Several Times Between December 26, 2017 to February 6, 2018................................5

      C.     The February 6, 2018 Settlement .........................................6

      D.     Plaintiff Calls Cenlar On February 6, 2018 To Confirm The $113,356.91 Reinstatement Payment Included In The Settlement Emails............................................................7

      E.     Ally Bank Files The Motion For Fees And Costs Pursuant To The Settlement Emails, And The State Court Awards Nearly All Of The Requested Fees And Costs, And Garnishes The Same .............................................................................8

      F.     Plaintiff Files The Subject Lawsuit, Alleging FDCPA Violations And Claims Regarding The Reinstatement Payment And Fee Order....................................................10

      G.     Plaintiff's RPOD/RAI Responses And Doc Production....................11

      H.     Occupancy Inspections Performed By Five Brothers.........................12

III.    **STANDARD OF REVIEW** ........................................................13

IV.    **ARGUMENT** ........................................................................13

    A.    Cenlar is Entitled to Summary Judgment on Plaintiff's FDCPA Claims ................................................................14

        1.    Plaintiff's FDCPA Claims Fail Because They Are Based Primarily On Allegations Of Phone Calls By Cenlar To Plaintiff That Never Occurred ..................................13

        2.    Plaintiff's FDCPA Claims Fail Because They Are Also Based On A False Allegation Of A Written Cease And Desist Letter That Was Never Made................................15

        3.    Plaintiff's FDCPA Claims Fail to the Extent They are Premised on Five Brothers' Property Inspections .............16

    B.    Plaintiff's Reinstatement Claims In Count Seven, Count Twelve, Count Thirteen And Count Fourteen Fail ..........................................19

        1.    Plaintiff's Count Seven And Fourteen Claims Fail Because Allowing Plaintiff To Reinstate And Obtaining And Enforcing The Fee Order Did Not Constitute Unfair, Misleading, or Deceptive Acts Or Practices ...........................20

        2.    Plaintiff's Count Twelve Claim Fails Because Plaintiff Did Not Negotiate A Separate Contract With Cenlar That Satisfied KSG's Foreclosure Fees And Costs .........................23

        3.    Count Thirteen Fails Because Ally Bank Did Not Promise To Waive KSG's Foreclosure Fees and Costs.........................25

    C.    False Factual Allegations Asserted By Plaintiff ................................26

V.    **CONCLUSION** ..................................................................26

TABLE OF AUTHORITIES

<u>CASES</u>

<u>Alqaq v. CitiMortgage, Inc.</u>,
    No. 13 C 5130, 2014 WL 1689685 (N.D. Ill. Apr. 29, 2014) ...........................18

<u>Balthazar v. Verizon Haw., Inc.</u>,
    109 Hawaii 69, 123 P.3d 194 (2005) ...................................................................20

<u>Bell v. City of Boise</u>,
    709 F.3d 890 (9th Cir. 2013) ...............................................................................22

<u>Bradford v. HSBC Mortg. Corp.</u>,
    829 F. Supp. 2d 340 (E.D. Va. 2011) ..................................................................19

<u>Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>,
    818 F.2d 1466 (9th Cir. 1987) .............................................................................13

<u>Carson v. Saito</u>,
    53 Haw. 178, 489 P.2d 636 (1971) ......................................................................23

<u>Castriotta v. Paradise Valley Fed. Credit Union</u>,
    No. 17CV0031-WQH-BGS, 2017 WL 3337247
     (S.D. Cal. Aug. 3, 2017) .....................................................................................17

<u>Celotex Corp. v. Catrett</u>,
    477 U.S. 317 (1986)..............................................................................................13

<u>Clark v. Capital Credit & Collection Services, Inc.</u>,
    460 F.3d 1162 (9th Cir. 2006) .............................................................................15

<u>Cohen v. Ditech Fin., LLC</u>,
    342 F. Supp. 3d 460 (S.D.N.Y. 2018) .................................................................17

<u>Courbat v. Dahana Ranch, Inc.</u>,
    111 Hawaii 254, 141 P.3d 427 (2006)..................................................................20

<u>Falahee v. Heide and Cook Ltd.</u>,
    CV. No. 10-00218 HG-BMK, 2010 WL 3001918
    (D. Haw. July 30, 2010).......................................................................................26

Hokama v. Relinc Corp.,
    57 Haw. 470, 476, 559 P.2d 279, 283 (1977).......................................................25

In re Doe,
    90 Hawai'i 200, 978 P.2d 166 (1999) ................................................................23

Keahole Point Fish LLC v. Skretting Canada Inc.,
    971 F. Supp. 2d 1017 (D. Haw. 2013)................................................................23

Laubach v. Arrow Serv. Bureau, Inc.,
    987 F. Supp. 625 (N.D. Ill. 1997).......................................................................18

Obduskey v. McCarthy & Holthus LLP,
    139 S. Ct. 1029 (2019).................................................................................17, 18

Paik Apau v. Deutsche Bank Nat. Trust Co.,
    Civil. No. 10–00699 SOM/RLP, 2012 WL 300417
    (D. Haw. Jan. 31, 2012) ...................................................................................13

Roadway Express, Inc. v. Piper,
    447 U.S. 752 (1980)..........................................................................................26

Schlaf v. Safeguard Property,
    899 F.3d 459 (7th Cir. 2018) ............................................................................17

Thompson v. Five Bros. Mortg. Co. Servs. & Securing Inc.,
    No. 1:15-CV-39, 2019 WL 2051798 (W.D. Mich. May 9, 2019)......................18

## STATUTES, RULES, REGULATIONS

15 U.S.C. § 1692(e) ...............................................................................................20
15 U.S.C. § 1692k(3) ..............................................................................................27
18 U.S.C. § 1621 .....................................................................................................26

Federal Rules of Civil Procedure

Fed. R. Civ. P. 56 ...................................................................................................19
Fed. R. Civ. P. 56(a)...............................................................................................13

## MEMORANDUM IN SUPPORT OF MOTION

## I.     INTRODUCTION

Defendants ALLY BANK and CENLAR FSB ("**Cenlar**", and with Ally Bank, the "**Defendants**") hereby move for summary judgment on Plaintiff JOHN HOCHROTH ("**Plaintiff**")'s Verified Complaint, filed on August 16, 2018 (the "**Complaint**").

Defendants are entitled to summary judgment as there is no genuine issue of material fact that each of the fourteen claims asserted in Plaintiff's Complaint are based upon false factual accusations that cannot sustain Plaintiff's claims as a matter of law.  Through a sworn and verified Complaint, Plaintiff has asserted numerous irrefutable lies in support of each of his claims.  These false allegations are proven through the call records Plaintiff produced, the transcripts of those call recordings, and other relevant evidence.

Specifically, of Plaintiff's fourteen claims, eleven of the claims are based on alleged violations of the Fair Debt Collection Practices Act arising from asserted phone calls by Cenlar and other communications ("**FDCPA Claims**").  To support these FDCPA Claims, Plaintiff alleges that during the year prior to the filing of the Complaint, Cenlar called him "at all hours of the day and night," "incessantly," and against his wishes, notwithstanding that he was represented by an attorney and had sent Cenlar a cease and desist letter.

These factual allegations are all untrue.  The phone records produced by Plaintiff show only thirteen calls between Plaintiff and Cenlar during the relevant time period, all between mid-December 2017 and early February 2018, and that ALL thirteen calls were outgoing calls initiated by Plaintiff **to** Cenlar.  The call recordings for those calls also show that Plaintiff was not only initiating the calls but was trying to obtain information from Cenlar regarding a possible reinstatement for his loan.  Likewise, the evidence also shows that there was never a cease and desist letter sent by Plaintiff to Cenlar.  To the contrary, the only evidence regarding a cease and desist is a December 27, 2017 letter from Plaintiff to Cenlar, requesting to communicate with Cenlar regarding his loan, confirming that there was no cease and desist, and authorizing Cenlar to communicate directly with him.

Plaintiff's remaining claims are based on an equally false theory that, during his reinstatement discussions with Cenlar between December 2017 and February 2018, he negotiated a binding reinstatement agreement directly with Cenlar that included a payment of $114,127.73 plus a small $4,362 payment for foreclosure attorneys' fees and costs.  Plaintiff therefore claims that he settled Kobayashi Sugita & Goda, LLP ("**KSG**")'s foreclosure fees and costs and this prevented Ally Bank from obtaining the Fee Order (defined below) against Plaintiff (defined below as the "**Reinstatement Claims**").

Once again, the recordings of these calls, together with call records and emails between the parties' counsel during the relevant period, show Plaintiff's Reinstatement Claims are similarly based upon false allegations. The evidence shows that Plaintiff knew the entire time that he would be responsible for KSG's attorneys' fees and costs in addition to the amount quoted to reinstate his loan. Plaintiff also knew that Cenlar could not and would not negotiate KSG's fees and costs. The evidence is irrefutable and is fatal to Plaintiff's Reinstatement Claims.

The numerous false factual allegations upon which Plaintiff's claims depend were, at best, asserted and articulated by Plaintiff's counsel without regard to their truth in violation of Rule 11, notwithstanding Plaintiff's sworn verification attached to the Complaint, and at worst, were purposefully made by Mr. Forrester and Plaintiff as an intended fraud upon the Court and Defendants.

For these reasons, Defendants request that the Motion be granted and all claims dismissed, and that the Court consider appropriate sanctions against Mr. Forrester and/or Plaintiff to prevent future, additional willful and/or reckless abuses of judicial process by Mr. Forrester and/or his clients in Hawaii courts.

## II.   INDISPUTABLE MATERIAL FACTS

### A.   Relevant Procedure In Foreclosure Action Leading To Settlement Negotiations Between Counsel

Ally Bank initiated a foreclosure action against Plaintiff and others on February 19, 2016 due to Plaintiff's default on the Mortgage in Circuit Court of the First Circuit, State of Hawaii (the "**Foreclosure Action**").

On October 16, 2017, Honorable Judge Jeffrey P. Crabtree of the Circuit Court of the First Circuit, State of Hawaii (the "**State Court**") entered judgment in favor of Ally Bank on its Foreclosure Action complaint (collectively "**Foreclosure Judgment**").  **Exhibit "A."**[2]

In late October 2017, Plaintiff's legal counsel, Richard Forrester ("**Mr. Forrester**"), requested "reinstatement" figures from Ally Bank.  Ally Bank initially took the position in mid-November 2017, through the undersigned counsel, that the deadline for reinstatement under the Mortgage had passed (which it had), and explained the legal basis for this position under applicable Hawaii law.   See Declaration of Counsel ("**Schiel Decl.**") ¶ 6.

On December 28, 2017, Mr. Forrester emailed Ally Bank's counsel a copy of a December 18, 2017 loan statement from Cenlar.  **Exhibit "B"** (the "**December 2017 Loan Statement**").  The December 2017 Loan Statement indicated that the amount due to reinstate the Loan was $111,179.75.  Id.  After receiving the December 2017 Loan Statement, Ally Bank confirmed that it would allow Plaintiff

---

[2] All exhibits and declarations referenced herein are attached to the Separate Concise Statement of Facts in Support of this Motion.

to reinstate his loan and stay the Foreclosure Action, but that he would be required to pay all attorneys' fees and costs incurred by Ally Bank's foreclosure counsel, KSG, in the Foreclosure Action.  Schiel Decl. ¶ 8.

### B. Plaintiff Calls Cenlar Several Times Between December 26, 2017 to February 6, 2018

On December 27, 2017, Plaintiff called Cenlar about reinstating his loan. **Exhibits "D1," "D," and "R"**; Declaration of Representative of Cenlar ("**Cenlar Decl.**") ¶¶ 7-9, 16.  Cenlar had no record of a written cease and desist from Plaintiff on file, but, because Plaintiff was also represented by legal counsel in the Foreclosure Action, Cenlar requested that Plaintiff fax a letter confirming that no cease was in effect, and that Cenlar could speak directly with Plaintiff.  **Exhibits "D2" and "D"**; Cenlar Decl. ¶ 16.

On December 27, 2017, Plaintiff faxed a short letter to Cenlar stating "This letter is to let you know that you are free to communicate with me directly, I, nor my lawyer, does not have any Cease and Desist in place preventing you from communicating directly with me."  Cenlar Decl. ¶¶ 5, 17; **Exhibit "C."**

Plaintiff subsequently called Cenlar several times between late December 2017 and mid-January 2018.  Cenlar Decl. ¶ 18.  **The call recordings of these calls show that Plaintiff was clearly told each time that reinstatement figures must come from foreclosure counsel (KSG), and that reinstatement figures did not include KSG's legal fees and costs incurred in the Foreclosure Action, which**

5

**needed to be negotiated directly with KSG**.  **Plaintiff responded each time that he understood this**.  See Exhibits "**D1**," "**D**," "**E1**," "**E**," "**F1**," and "**F**" (individually a "**Call Recording**," and collectively, together with the February 6, 2018 Call Recording (identified below), the "**Call Recordings**").

**C.    The February 6, 2018 Settlement**

Mr. Forrester and the undersigned thereafter negotiated terms for the reinstatement and payment of KSG's fees and costs incurred in the Foreclosure Action.  Schiel Decl. ¶ 10.  By settlement proposal letter dated January 31, 2018, the undersigned sent a proposed settlement to Mr. Forrester, which would include a reinstatement in the amount of $113,356.91, plus fees and costs incurred in the Foreclosure Action in the amount of $47,021.68, and stipulated releases of all claims/actions/etc.  Ally Bank's January 31 letter included an itemized table showing the attorneys' fees and costs incurred to date, and an itemization of the $113,356.91 reinstatement amount.  **Exhibit "G."**

On February 1, 2018, Mr. Forrester sent a counterproposal to the undersigned on behalf of Plaintiff, agreeing to the $113,356.91 reinstatement amount but rejecting the proposed payment of $47,021.68 in fees and costs, asserting that they were unreasonable.  Thus, the parties agreed on terms other than as to how to deal with the $47,021.68 fees and costs incurred by Ally Bank in the Foreclosure Action.

Later the same day on February 1, 2018, the undersigned sent a counter-proposal by email to Mr. Forrester on behalf of Ally Bank, proposing that the parties resolve the issue of the "reasonableness" of Ally Bank's fees and costs by allowing Judge Crabtree to determine reasonable fees and costs incurred by way of motion in the Foreclosure Action.

On February 6, 2018, Mr. Forrester responded that he had spoken with Plaintiff, and that the parties had an agreement:

> I spoke with Mr. Hochroth and it seems we are in a [sic] agreement on all of the material terms, namely: (1) $113,356.91 to Cenlar (or similar adjusted figure if Feb 14 passes); **(2) reasonable attorneys' fees should be decided by motion (hearing or non-hearing)**; (3) a settlement agreement documenting the above; and (4) dismissals of all claims and appeals.

**Exhibit "H"** at 1 (emphasis added) (the **"Settlement Emails"**).

### D.     Plaintiff Calls Cenlar On February 6, 2018 To Confirm The $113,356.91 Reinstatement Payment Included In The Settlement Emails

On February 6, 2018, the same day Plaintiff's attorney informed Ally Bank's counsel that he "spoke with Mr. Hochroth" and that the parties were in agreement on the terms in Ally Bank's February 1 settlement email, Plaintiff also called Cenlar directly to confirm the correct reinstatement amount contained in Ally Bank's counsel's February 1, 2018 email. **Exhibits "I1"** and **"I"** (the ""**February 6, 2018 Call Recording**"). Specifically, Plaintiff wanted to confirm whether the correct amount was the $113,356.91 amount in the February 1, 2018 Settlement Emails, or

$114,127.73 (his most recent automated loan statement).  Id.  Plaintiff was told to rely on the reinstatement amount from KSG and not to rely on the January 2018 loan statement.  On February 7, 2018, Plaintiff sent Cenlar a certified check in the amount of $114,127.73.  Cenlar Decl. ¶ 19-20.

> **E.**     **Ally Bank Files The Motion For Fees And Costs Pursuant To The Settlement Emails, And The State Court Awards Nearly All Of The Requested Fees And Costs, And Garnishes The Same**

Consistent with the parties' February 6 Settlement Emails, on February 9, 2018, Ally Bank filed a motion for fees and costs in the Foreclosure Action ("**Motion for Fees and Costs**"), Plaintiff filed an opposition to the same, and Ally Bank filed a reply.  **Exhibits "J," "J1," and "J2."**  The hearing on the Motion for Fees and Costs occurred on March 1, 2018.  See **Exhibit "J3."**  At no time, either in the pleadings or at the hearing on the Motion for Fees and Costs, did Mr. Forrester argue that the fees and costs had already been satisfied by his client.  Mr. Forrester only argued that the asserted fees and costs were unreasonable.  Id.

On April 9, 2018, the State Court issued an Interim Order Granting in Part and Denying in Part Plaintiff Ally Bank's Motion for Attorney's Fees and Costs ("**Interim Fee Order**").  **Exhibit "K."**  The State Court awarded Ally Bank $44,293.70 in attorneys' fees and $1,344.18 in costs (the "**Fees and Costs Award**"), reducing Ally Bank's requested attorneys' fees by only $3,636.12, pursuant to a May

4, 2018 Amended Order Granting in Part and Denying Part Plaintiff Ally Bank's Motion for Attorney's Fees and Costs ("**Fee Order**").  **Exhibit "L."**

Shortly after the Fee Order entered, Plaintiff's legal counsel suddenly took the position that his client was not obligated to pay a single penny awarded in the Fee Order.  By letter to the State Court dated May 22, 2018, Mr. Forrester asserted that a February 26, 2018 letter from Cenlar to Plaintiff (attached as Exhibit "A" to his letter), sent after Plaintiff had made the initial $114,127.73 reinstatement payment, had somehow negated the Fee Order.  <u>See</u> **Exhibit "M"** at exhibit "A."  The February 26 letter stated "Your reinstatement payment has been received and any foreclosure action will be closed.  **<u>Please be advised that there may be default-related charges that were not yet billed at the time your last billing statement was issued</u>**."  <u>Id.</u> (emphasis added).

In June 2018, Ally Bank submitted a proposed Judgment for Attorneys' Fees and Costs ("**Fee Judgment**") to the Court.  On June 26, 2018, Plaintiff sought for a second time to set aside the Fee Order, this time arguing that judgment on the Fee Order was precluded due to his "reinstatement" payment.  <u>See</u> **Exhibit "X"** at 2. The State Court rejected Plaintiff's arguments—including his reinstatement argument— and entered the Fee Judgment.  **Exhibit "Y."**

After Plaintiff refused to voluntarily pay the Fee Order, despite entry of the Fee Judgment, Ally Bank decided to collect it.  On August 28, 2018, the State Court

entered a Garnishee Order ordering Garnishee First Hawaiian Bank ("**FHB**") to pay Ally Bank $45,637.88 along with interest at the rate of ten percent per annum from July 27, 2018 through the date of payment from Plaintiff's bank account in satisfaction of the Fee Judgment.  **Exhibit "N."**  The Fee Judgment was satisfied through the garnishment of Plaintiff's FHB account immediately thereafter.  Schiel Decl. ¶ 20.

### F.   Plaintiff Files The Subject Lawsuit, Alleging FDCPA Violations And Claims Regarding The Reinstatement Payment And Fee Order

On August 16, 2018, Plaintiff filed the subject Verified Complaint against Ally Bank and Cenlar, asserting eleven (11) "FDCPA Claims," and three (3) Reinstatement Claims under Hawaii state law.  See generally Complaint.

Plaintiff's FDCPA Claims assert various FDCPA violations based on the theory that, during the year prior to the filing of the Complaint, Cenlar called him "at all hours of the day and night," "incessantly," and communicated with him through third parties against his wishes, notwithstanding that he was represented by an attorney and had allegedly sent Cenlar a cease and desist letter.

Plaintiff's Reinstatement Claims assert breach of contract, promissory estoppel, and unfair and deceptive practices claims based on the theory that he negotiated a binding reinstatement agreement directly with Cenlar that included a payment of $114,127.73 plus a small $4,362 payment for foreclosure attorneys' fees

and costs.  Plaintiff asserts that Ally Bank breached this asserted agreement when it simultaneously sought and obtained the Fee Order in the Foreclosure Action.

### G.    Plaintiff's RPOD/RAI Responses And Doc Production

On August 26, 2019, Defendants served Plaintiff with their First Request for Production of Documents ("**RPOD**") and their First Request for Answers to Interrogatories to Plaintiff ("**RAI**").  **Exhibits "O" and "P."**  Plaintiff responded to the RPOD and RAI on September 27, 2019.   Plaintiff also produced 2,185 documents in response to the RPOD ("**Plaintiff's Document Production**").  Schiel Decl. ¶ 23.

Plaintiff's Document Production includes call records of telephone calls between Plaintiff and Cenlar, collectively referred to herein as the "**Call Records**." **Exhibit "Q."**  Cenlar's servicing notes also show the same calls from Plaintiff to Cenlar during the period in question.   See **Exhibit "R"** ("**Cenlar's Servicing Records**").  Plaintiff's Call Records and Cenlar's Servicing Records show that the only calls between Plaintiff and Cenlar during the relevant period originated from Plaintiff to Cenlar only, and occurred on December 26, 2017, December 27, 2017, December 28, 2017, January 2, 2018, January 10, 2018, January 16, 2018, January 18, 2018, and February 6, 2019.  Compare **Exhibit "Q,"** with **Exhibit "R."**

Plaintiff's Document Production also included loan statements for the months of September 2017, October 2017, December 2017, January 2018, March 2018, and April 2018. **Exhibit "S"** (the "**Loan Statements**").

The Loan Statements do not show any attorneys' fees and costs being added to Plaintiff's loan balance on top of the reinstatement payment amount, much less $4,362 during the months of March and April 2018, as alleged by Plaintiff in the Complaint. Id. Rather, the January 17, 2018 loan statement reflected a balance owning of $114,127.73, which included "other fees" owed on the loan totaling $4,412.47. Plaintiff was to pay Cenlar $113,356.91, in addition to reasonable attorneys' fees that were to be decided by motion as stated in the Settlement Emails. See **Exhibit "H."** Similar fees in the amount of $4,379.97 were likewise included in the $113,356.91 reinstatement quoted in the Settlement Emails. **Exhibit "G"** at 10.

## H.    Occupancy Inspections Performed By Five Brothers

After Plaintiff defaulted on his loan, Cenlar engaged Five Brothers Mortgage Company Services and Securing, Inc. ("**Five Brothers**") to verify who was occupying the Property, and the condition of the Property. Declaration of Rebecca M. Sutton ¶ 12, 14 ("**Sutton Decl.**"). The monthly occupancy inspections performed by Five Brothers are described in further detail in the Sutton Decl., and do not

constitute debt collection based on the facts therein and the applicable law discussed below.

## III.   STANDARD OF REVIEW

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the nonmoving party fails to provide facts to establish what will be an essential element at trial, the court must grant summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The "nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial." Paik Apau v. Deutsche Bank Nat. Trust Co., Civil. No. 10–00699 SOM/RLP, 2012 WL 300417, at *4 (D. Haw. Jan. 31, 2012).  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

## IV.   ARGUMENT

### A.   Cenlar is Entitled to Summary Judgment on Plaintiff's FDCPA Claims

1.    ***Plaintiff's FDCPA Claims Fail Because They Are Based Primarily On Allegations Of Phone Calls By Cenlar To Plaintiff That Never Occurred***

Plaintiff's FDCPA Claims, and specifically Counts One, Two, Four, Five, Six, Eight, and Nine, assert various violations of the FDCPA based on alleged incessant and unsolicited phone calls by Cenlar.   Plaintiff alleges that these phone calls violated the FDCPA because they were made by Cenlar (a) outside the hours of 8am – 9pm HST (Count One), (b) while he was represented by an attorney (Count Two), (c) invasively and without any allowed purpose (Count Four), (d) incessantly in a manner with intent to annoy, abuse, and/or harass him (Count Five), (e) without disclosing their identity (Count Six), (f) in a manner that falsely represented the character, amount, or legal status of Plaintiff's debt (Count Eight), and (g) without mini-Miranda warnings (Count Nine).  See Complaint ¶¶ 15-20.

Each of these claims fail because they rely upon false allegations of phone calls by Cenlar to Plaintiff that did not occur.  See supra § II (B), (D).  Rather, it was Plaintiff, not Cenlar, who initiated each and every call, starting with his call to Cenlar on December 26, 2017 and ending with his final call on February 6, 2018.  This conclusion is irrefutable and is proven by Plaintiff's own Call Records, Cenlar's Servicing Records, and the Call Recordings.  See id.

Plaintiff cannot maintain any of his FDCPA Claims based upon false allegations of phone calls by Cenlar.  Therefore, Plaintiff's FDCPA Claims in

Counts One, Two, Four, Five, Six, Eight and Nine fail to the extent they rely on numerous false factual allegations regarding phone calls by Cenlar that are disproven by the evidentiary record in this case.

### 2. *Plaintiff's FDCPA Claims Fail Because They Are Also Based On A False Allegation Of A Written Cease And Desist Letter*

In Count Three, Plaintiff asserts that Cenlar violated the FDCPA by communicating with him while a written cease and desist was in effect. The irrefutable evidence proves again that Plaintiff is lying to this Court.

As set forth above**, there is no evidence of any written cease and desist letter on file with Cenlar**. This is proven by Plaintiff's Production, which does not include a written cease and desist letter, and Cenlar's Servicing Records. See supra § B; Schiel Decl. ¶ 24.

Additionally, Plaintiff himself confirmed that there was no written cease and desist in place through his December 27, 2017 letter to Cenlar, wherein he states "This letter is to let you know that you are free to communicate with me directly, **I, nor my lawyer, does not have [sic] any Cease and Desist in place preventing you from communicating directly with me**." **Exhibit "C"** (emphasis added).

Finally, even if there had been a written cease and desist letter at the time Plaintiff called Cenlar on December 26, 2018, which there clearly was not, Plaintiff would have waived the cease and desist by calling Cenlar to discuss his loan. See Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1172 (9th Cir.

2006) ("[E]ven the least sophisticated debtor would recognize that [the borrower's] request for information constituted consent for [the servicer] to return [the borrower's] call in order to provide the specific information she requested," effectively waiving the borrower's rights).

For the foregoing reasons, there is no genuine issue of material fact that Plaintiff's Count Three claim fails because it was also based on false factual allegations that cannot sustain the claim as a matter of law.  Plaintiff's express authorization for Cenlar to communicate with him on December 27, 2017 also dispenses with the allegations in Count Two of the Complaint.  See **Exhibit "C."**

### 3.   *Plaintiff's FDCPA Claims Fail to the Extent They are Premised on Five Brothers' Property Inspections*

In addition to his false arguments that Cenlar violated the FDCPA through its own conduct, Plaintiff falsely alleges that Cenlar violated certain provisions of the FDCPA through the conduct of Five Brothers.  Complaint ¶¶ 17, 21-23, 49, 64, 69, 74, 104-08, 113, 119-20, and 127-28.  All of Plaintiff's arguments in this regard fail for several reasons.

*First*, all claims premised on Five Brothers' alleged conduct fail because Five Brothers is not a "debt collector" under the FDCPA's "primary" definition of that

term.[3]  <u>Castriotta v. Paradise Valley Fed. Credit Union</u>, No. 17CV0031-WQH-BGS, 2017 WL 3337247, at *3 (S.D. Cal. Aug. 3, 2017) ("To state a claim under the FDCPA, a plaintiff must allege facts that establish that . . . the defendant attempting to collect the debt qualifies as a 'debt collector' under the FDCPA").  Here, all that Five Brothers' Property Inspectors did was inspect the Property and leave door hangers, <u>see</u> **Exhibit "T,"** either at the Property or with Plaintiff.

In a case with facts almost identical to the facts here, the court found that placing door hangers (aka "door tags") on a debtor's door with a request for the debtor to contact his servicer "does not rise to the level of [direct or indirect] 'debt collecting' under the FDCPA . . . ."  <u>Cohen v. Ditech Fin., LLC</u>, 342 F. Supp. 3d 460, 467 (S.D.N.Y. 2018).

Like the inspection company in <u>Cohen</u>, Five Brothers (1) did not know how much was owed by Plaintiff, (2) did not discuss the debt with Plaintiff, and (3) did not collect any money or attempt to collect any money from Plaintiff.  <u>See</u> Sutton Decl. ¶¶ 5, 7-9, 16-19, 26-28.  Further, like the company in <u>Cohen</u>, Five Brothers' compensation was not contingent on whether the debt is ultimately paid by Plaintiff.  <u>Compare</u> <u>Cohen</u> 342 F. Supp. 3d at 467, <u>with</u> Sutton Decl. ¶¶ 10-11; <u>see also, e.g.</u>, <u>Schlaf v. Safeguard Property</u>, 899 F.3d 459, 466-67 (7th Cir. 2018) (placing door

---

[3] There are two definitions for a "debt collector" under the FDCPA—a "primary" and "limited-purpose" definition.  <u>See</u> <u>Obduskey v. McCarthy & Holthus LLP</u>, 139 S. Ct. 1029, 1034-36, 1038 (2019).  Neither definition applies in this case.

hanger did not rise to the level of indirect debt collection); cf. **Exhibit "T"**; <u>Laubach v. Arrow Serv. Bureau, Inc.</u>, 987 F. Supp. 625 (N.D. Ill. 1997).

*Second*, Plaintiff's FDCPA claims also fail because Five Brothers is not a "debt collector" under the "limited-purpose" definition, <u>see</u> <u>Obduskey</u>, 139 S. Ct. at 1036, for the singular reason that its principal purpose **is not** enforcement of security interests.  As stated in the Sutton Decl., Five Brothers' principal purpose is "to inspect, preserve, and maintain properties on behalf of its clients."  Sutton Decl. ¶ 6; <u>see also id.</u> ¶¶ 5, 14; <u>Thompson v. Five Bros. Mortg. Co. Servs. & Securing Inc.</u>, No. 1:15-CV-39, 2019 WL 2051798, at *1 (W.D. Mich. May 9, 2019) (property preservation activities did not make Five Brothers a debt collector under the "primary" or "limited-purpose" definitions); <u>Alqaq v. CitiMortgage, Inc.</u>, No. 13 C 5130, 2014 WL 1689685, at *4 (N.D. Ill. Apr. 29, 2014) (finding that winterizing property was "incidental to debt collection and was not dispossession or disablement of property to enforce a security interest").

*Third*, at a minimum Plaintiff's claims in Counts One, Three, Four, Eight, Ten, and Eleven premised on Five Brothers' alleged conduct fail because: (a) it is indisputable that the Property Inspectors did not inspect the Property before 8:00 a.m. or after 9:00 p.m. (Count One), <u>see</u> Sutton Decl. ¶¶ 23 and **Exhibit "U"**; (b) there was never a written cease and desist letter from Plaintiff (Count Three), <u>see</u> <u>supra</u> § II(B); (c) there is nothing objectively threatening about the "door tags"

(Count Four), <u>see</u> **Exhibit "T"**; (d) there is no credible evidence that Property Inspectors told Plaintiff anything about collecting the debt (Count Eight), <u>see</u> Sutton Decl. ¶¶ 9, 11, 16-19, 24-28; (e) it is indisputable that Five Brothers never "served" Plaintiff with anything (Count Ten), <u>see</u> <u>id</u> ¶ 36; and (f) the language on the door hangers does not violate the FDCPA and Five Brothers never sent any postcards to Plaintiff.  <u>See</u> <u>id.</u> ¶¶ 29-34; <u>see also</u> Cenlar Decl. ¶¶ 21-31.

### B. Plaintiff's Reinstatement Claims In Count Seven, Count Twelve, Count Thirteen And Count Fourteen Fail

Each of Plaintiff's four Reinstatement Claims fail because each claim relies upon a blatantly dishonest theory—which was implicitly rejected by the State Court—that Plaintiff negotiated a separate reinstatement agreement directly with Cenlar regarding KSG's foreclosure fees and costs, which he asserts prevented Ally Bank from obtaining and enforcing the Fees and Costs Order in the Foreclosure Action.  <u>See, e.g.</u>, **Exhibits "X"** and **"Y."**

The irrefutable evidence shows that these factual allegations were falsely asserted by Plaintiff and therefore cannot support an FDCPA claim,[4] a breach of contract claim, a promissory estoppel claim, a UDAP claim, or any other claim.

---

[4] Further, any FDCPA claim against Ally Bank fails as a matter of law because Ally Bank is not a "debt collector" under the FDCPA.  <u>See</u> <u>Bradford v. HSBC Mortg.</u> <u>Corp.</u>, 829 F. Supp. 2d 340, 348 (E.D. Va. 2011) ("Ally is not a 'debt collector' because it falls within the so-called creditor exemption of the FDCPA, under which the statutory definition of 'debt collector' generally excludes creditors.").

Defendants have clearly met their evidentiary burden under FRCP Rule 56 by proving an absence of **any** evidence to support Plaintiff's Reinstatement Claims, much less evidence to create a genuine issue of material fact.

    **1.**    ***Plaintiff's Count Seven And Fourteen Claims Fail Because Allowing Plaintiff To Reinstate And Obtaining And Enforcing The Fee Order Did Not Constitute Unfair, Misleading, or Deceptive Acts Or Practices***

Hawaii courts have held that "[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Balthazar v. Verizon Haw., Inc., 109 Hawaii 69, 77, 123 P.3d 194 (2005). A deceptive act or practice is (1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, where (3) the representation, omission, or practice is material. Courbat v. Dahana Ranch, Inc., 111 Hawaii 254, 261, 141 P.3d 427 (2006). "A representation, omission, or practice is considered 'material' if it involves 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" Id.; 15 U.S.C. §1692(e) (prohibiting "any false, deceptive, or misleading representation or means in connection with the collection of any debt.").

Here, the asserted "misleading" or "unfair and deceptive" act or practice in Counts Seven and Fourteen of the Compliant is Defendants alleged "attempt to collect the debt and related matters by misleading representations regarding

Plaintiff's reinstatement and Ally Bank's attorneys' fees."  Complaint ¶ 155; see also, e.g., ¶¶ 99-100.

However, the Call Recordings prove that Plaintiff was consistently told by Cenlar during the relevant period (December 26, 2017 to February 6, 2018), and very clearly understood, that a reinstatement amount for his loan would be provided by Ally Bank's foreclosure counsel, not Cenlar.  See **Exhibits "D1," "D," "E1," "E," "F1," "F," "I1," and "I."**  The same Call Recordings also prove that Plaintiff was repeatedly told by Cenlar, and very clearly understood, that fees and costs could not be negotiated by Cenlar, and that he needed to contact Ally Bank's foreclosure counsel to obtain foreclosure fees and costs figures.  See id.

The Call Recordings and Settlement Emails also show that Plaintiff knew during the entire relevant time (from December 26, 2017 through February 6, 2018) that his foreclosure counsel was negotiating with Ally Bank's foreclosure counsel the specific terms for reinstating his loan and settling the Foreclosure Action.  See id.; see also **Exhibits "H," "J," "J1," "J2,"** and **"J3."**  These negotiated terms included paying KSG's reasonable attorneys' fees and costs incurred by Ally Bank in the Foreclosure Action, which amount he and his counsel agreed through the Settlement Emails would be determined by the State Court through the Fees and Costs Motion.  See id.

Cenlar's automated February 26, 2018 letter says nothing other than that the foreclosure will be dismissed[5] and default-related expenses subsequently billed to Plaintiff.  The letter says nothing about resolving KSG's foreclosure fees and costs, except to say that default-related fees will subsequently be billed to him.  See **Exhibit "M"** at exhibit "A."

Further, Plaintiff's argument that Ally Bank was precluded from entering or collecting on the Fee Order was already made and clearly rejected by the State Court when it entered the Fee Judgment.  Compare **Exhibit "X,"** with **Exhibit "Y."**  Thus, Plaintiff's arguments in this regard are nothing more than an implicit attempt to challenge and overturn the State Court's Fee Judgment.  See generally Bell v. City of Boise, 709 F.3d 890 (9th Cir. 2013).

Finally, the Loan Statements show Plaintiff's loan balance never increased in March or April of 2018 (or at any relevant time around those months) by $4,362 to reflect a falsely asserted February 2018 side agreement with Cenlar regarding the payment of KSG's foreclosure attorneys' fees and costs.  See **Exhibit "S."**  Indeed, the only agreement Plaintiff and Ally Bank negotiated regarding KSG's fees and costs is stated in the Settlement Emails, which provided for a determination of Ally

---

[5] The Foreclosure Action has not been dismissed due to Plaintiff's refusal to stipulate to a dismissal unless the Fees and Costs Order is set aside.

Bank's reasonable fees and costs through the Motion for Fees and Costs.  **Exhibit "J."**

Therefore, Counts Seven and Fourteen should be dismissed with prejudice.

> **2.** *Plaintiff's Count Twelve Claim Fails Because Plaintiff Did Not Negotiate A Separate Contract With Cenlar That Satisfied KSG's Foreclosure Fees And Costs*

To prevail on a claim for breach of contract in Hawai'i, a party must prove: "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract."  Keahole Point Fish LLC v. Skretting Canada Inc., 971 F. Supp. 2d 1017, 1040 (D. Haw. 2013) (citation and internal quotation marks omitted).  To prove a binding contract, Plaintiff must prove "an offer and acceptance, consideration, and parties who have the capacity and authority to agree as they do."  In re Doe, 90 Hawai'i 200, 208, 978 P.2d 166, 174 (1999).  In addition, "[t]here must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract."  Carson v. Saito, 53 Haw. 178, 182, 489 P.2d 636, 638 (1971).

The "contract" Plaintiff seeks to enforce in Count Twelve is a purported side agreement with Cenlar, which he alleges settled KSG's foreclosure fees and costs.  See Complaint ¶¶ 29-35, 131-40.  The "evidence" of a contract that Plaintiff relies on are his "negotiations" with Cenlar, Cenlar's February 26, 2018 letter stating that

default related charges would be billed to him on a future billing statement, and the false assertion that attorneys' fees and costs were subsequently billed to him on a future loan statement in March or April of 2018. Finally, the "breach" Plaintiff asserts is Ally Bank's enforcement of the Fee Order. Id. ¶ 138.

Plaintiff's arguments fail for all of the reasons already discussed. The "negotiations" with Cenlar are reflected in the Call Recordings, which show that Plaintiff was repeatedly told by Cenlar that it could not negotiate KSG's foreclosure fees and costs incurred in the Foreclosure Action and to contact KSG.

The automated January 2018 loan statement did not constitute a binding agreement to settle KSG's foreclosure fees and costs as the loan statement says nothing about KSG's fees and costs. Similarly, Cenlar's February 26, 2018 letter did not constitute a binding agreement to settle KSG's foreclosure fees and costs as the letter doesn't reference KSG's foreclosure fees and costs, and only states that default-related expenses will be subsequently billed to him. There is also no evidence whatsoever that Plaintiff's loan balance increased in March or April of 2018 to reflect an agreement to pay KSG's foreclosure fees and costs.

Moreover, while the lack of any agreement to settle KSG's fees and costs through the foregoing evidence is abundantly clear, the surrounding evidence shows that Plaintiff knew that KSG's foreclosure fees and costs could not be settled by Cenlar, would need to be negotiated through foreclosure counsel, and were in fact

negotiated through Ally Bank's and Plaintiff's respective legal counsel. See supra II §§ (B)-(D); see also Hokama v. Relinc Corp., 57 Haw. 470, 476, 559 P.2d 279, 283 (1977) ("Where there is any doubt or controversy as to the meaning of the language, the court is permitted to consider parol evidence to explain the intent of the parties and the circumstances under which the agreement was executed.")

For the foregoing reasons, Count Twelve fails and must be dismissed with prejudice.

**3.    *Count Thirteen Fails Because Ally Bank Did Not Promise To Waive KSG's Foreclosure Fees and Costs***

The same argument and evidence above regarding Count Twelve, which proves Ally Bank did not enter into or breach an agreement to settle KSG's foreclosure fees and costs, applies with equal force to Plaintiff's promissory estoppel claim and are incorporated herein by reference for sake of efficiency.

Moreover, even assuming Plaintiff claims to have somehow misunderstood the February 26, 2018 letter to mean something it obviously didn't, such reliance would have been grossly unreasonable considering that: (a) he was told several times in the preceding weeks that Cenlar did not negotiate foreclosure attorneys' fees and costs, and that he would need to resolve them through foreclosure counsel; (b) he responded each time that he understood this; (c) his attorney negotiated an agreement for resolving the KSG's attorneys' fees by way of motion; and (d) he was aware of his attorney's negotiations and agreement regarding KSG's attorneys' fees and costs,

25

as he referenced the Settlement Emails during his February 6, 2018 call with Cenlar. See **Exhibits "D1," "D," "E1," "E," "F1," "F," "I1," "I," "H," "J," "J1," "J2," and "J3"**; <u>Falahee v. Heide and Cook Ltd.,</u> CV. No. 10-00218 HG-BMK, 2010 WL 3001918 (D. Haw. July 30, 2010) ("In order for Plaintiff to recover under a theory of promissory estoppel, he would have to establish, among other things, that his reliance on the promise was 'reasonable.'" (internal citations omitted)); <u>see also</u> **Exhibits "X"** and **"Y."**

Therefore, Plaintiff's promissory estoppel claim fails for all of the foregoing reasons and must also be dismissed with prejudice.

## C.     False Factual Allegations Asserted By Plaintiff

Plaintiff's false allegations, all sworn to under oath in his verified Complaint, are numerous, material, and essential to the claims asserted in Complaint and are set forth in detail above.  However, for the sake of efficiency, the table attached hereto as **Exhibit "V"** succinctly lays out Plaintiff's falsehoods, the irrefutable evidence which unmasks them, and how Plaintiff and his counsel improperly sought to use those lies to support the frivolous claims asserted in the Complaint.  <u>See</u> 18 U.S.C. § 1621.

In <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752 (1980), the Supreme Court reiterated the federal courts' inherent power to levy sanctions, including attorneys' fees, for "when the losing party has acted in bad faith, vexatiously, wantonly, or for

oppressive reasons. . . ."   Additionally, fees and costs may be awarded to the successful defendant where the FDCPA claim was brought in bad faith or to harass the opposing party and/or counsel.  15 U.S.C. § 1692k(3).

## V.   CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant this Motion in its entirely as described hereinabove and issue sanctions against Plaintiff and/or his counsel based on Plaintiff's perjury and Plaintiff's counsel's reckless disregard of the truth in the filing of the Verified Complaint.

DATED:  Honolulu, Hawaii November 13, 2019.

/s/ Jesse W. Schiel
JESSE W. SCHIEL
NICHOLAS R. MONLUX

Attorneys for Defendants
ALLY BANK and CENLAR FSB